IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| VALERIE FORSMAN and LLOYD GRUBER, individually and on behalf of themselves and all others similarly situated, | CV 12–157–M–DWM |
| Plaintiffs, | |
| vs. | ORDER |
| UNITED FINANCIAL CASUALTY COMPANY, PROGRESSIVE, and DOES 1–25, | |
| Defendants. | |

**I. Introduction**

On March 30, 2012, Plaintiffs Valerie Forsman and Lloyd Gruber (collectively "Plaintiffs") filed their Complaint and Class Action Claims against United Financial Casualty Company and Progressive[1] (collectively "Defendants"), alleging that Defendants breached their automobile insurance contracts and

---

[1] United Financial states that "Progressive" is a non-existent association that has not been served in this case, (*see* doc. 20 at ¶ 2); however, in the Answer, United Financial admits that it is a wholly owned subsidiary of Progressive Commercial Holdings, Inc., which, in turn, is a wholly owned subsidiary of The Progressive Corporation, (*see* doc. 6 at ¶ 2).

1

violated Montana's "made whole" doctrine by denying their collision claims after they were in automobile accidents with at-fault third parties whose insurers paid for Plaintiffs' damages.   Pursuant to Federal Rule of Civil Procedure 12(c), Defendant United Financial Casualty Company ("United Financial") moves for judgment on the pleadings as to Plaintiffs' claims.  (Doc. 20.)  Plaintiffs move for partial summary judgment, (doc. 15), and, in response, United Financial has filed for 56(d) relief, (doc. 27).  United Financial's 12(c) motion is well-taken, so it is granted. United Financial's Rule 56(d) motion is therefore denied as moot. Plaintiffs' motion for partial summary judgment is also denied.

## II. Background

### A.    Factual Background

Plaintiffs allege they each carried collision coverage with United Financial when they were each involved in automobile accidents with at-fault, third-party drivers.  (Compl., doc. 5, ¶¶ 3-4.)  Plaintiff Forsman alleges her accident damaged her automobile in an amount exceeding $10,000 and Plaintiff Gruber alleges his accident damaged his automobile in an amount exceeding $1,100.  (*Id.*) According to the Complaint, the damage to Plaintiffs' respective automobiles "was paid by the at-fault driver's insurance company" in settlement.  (*Id.*)

Both Plaintiffs allege they made claims under their respective collision

2

coverage with United Financial, and their claims were denied pursuant to the "duplicate recovery" provision under the collision coverage of the policy, which provides:

> Payments for loss covered under Collision Coverage, a Comprehensive Coverage, Fire and Theft with Combined Additional Coverage are subject to the following provisions:
>
> ****
>
> c.     duplicate recovery for the same elements of damages is not permitted.

(*Id.*)  Plaintiffs allege that neither of them were compensated for all of their damages and costs of recovery (including attorneys fees) by settlement with the at-fault insurers.  (*Id.* at ¶ 5.)

The relevant provision regarding what is included under the policies' Collision Coverage states: "Subject to the Limits of Liability, if you pay the premium for Collision Coverage, we will pay for loss to your insured auto and its equipment when it collides with another object or overturns."  (Doc. 21-2, Ex. 2 at 14.)

## B.     Procedural Background

On March 20, 2012, Plaintiffs filed their Complaint and Class Action Claims in the Montana Eleventh District, Flathead County.  On September 13, 2012, the case was removed to federal court.  On January 25, 2013, Plaintiffs filed

3

a Motion for Partial Summary Judgment, (doc. 15), and United Financial filed a 12(c) Motion for Judgment on the Pleadings, (doc. 20).  On March 1, 2013, United Financial filed a Rule 56(d) motion, requesting this Court permit it to conduct discovery related to Plaintiffs' partial summary judgment motion to the extent the Court considers or relies on facts concerning whether Plaintiffs were "made whole" under Montana law or whether they subjectively expected to receive coverage.  (Doc. 27).

### III.  Legal Standards

**A.    Rule 12(c)**

A Rule 12(c) motion for judgment on the pleadings is the functional equivalent of a Rule 12(b)(6) motion to dismiss for failure to state a claim, except it is filed after the answer.  *See Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n. 4 (9th Cir. 2011).  Accordingly, the Court must "inquire whether the complaint's factual allegations, together with all reasonable inferences, state a plausible claim for relief."  *Id.*  A facially plausible complaint "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).  In considering the motions, the Court "must accept all factual allegations in the complaint as true and construe them in the light most favorable

4

to the non-moving party." *Fleming v Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). However, a court is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *Sprewell v. Golden St. Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "Judgment on the pleadings is properly granted when there is no material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Fleming*, 581 F.3d at 925.

**B.    Rule 56(d)**

Federal Rule of Civil Procedure 56(d) provides: "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." The party seeking a continuance bears the burden to show what specific facts it hopes to discover that will raise an issue of material fact. *Contl. Merrytime of S.F., Inc. v. Pac. Coast Metal Trades Dist. Counsel, Metal Trades Dept., AFL-CIO*, 817 F.2d 1391, 1395 (9th Cir. 1987). A court's decision whether or not to grant 56(d) relief is reviewed for abuse of discretion. *Tatum v. City & Co. of S.F.*, 441 F.3d 1090, 1100 (9th Cir. 2006).

5

C.      **Summary Judgment**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Material facts are those which might affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable fact-finder to return a verdict for the nonmoving party. *Id.*

## IV. Analysis

A.      **Rule 12(c) Motion**

1.      **This Court may properly consider the insurance policy and attached orders without converting United Financial's 12(c) motion for judgment on the pleadings into a motion for summary judgment.**

"Judgment on the pleadings is limited to material included in the pleadings."

*Yakima Valley Memorial Hosp. v. Wash. St. Dept. of Health*, 654 F.3d 919, 925 n. 6 (9th Cir. 2011).  However, in ruling on a 12(c) motion, the Court may consider—in addition to the complaint—"documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).  A document "may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).   The Court's decision to incorporate documents in the complaint by reference is reviewed for abuse of discretion.  *Davis v. HSBC Bank Nev, N.A.*, 691 F.3d 1152, 1160 (9th Cir. 2012).

Here, the insurance policy and its language form the basis of Plaintiffs' claims and, as such, meets the requirements for a document incorporated by reference.  Similarly, the Court may take judicial notice of attached orders.  As a result, this Court may consider those documents without converting United Financial's 12(c) motion into a motion for summary judgment.

**2.     Attorneys fees and costs are not recoverable under the policies' Collision Coverage.**

Plaintiffs first contend their claims were improperly denied absent recovery

7

for attorneys' fees and costs.  United Financial contends Plaintiffs' claims were properly denied on the grounds that attorneys' fees and costs of recovery are not covered under Plaintiffs' collision policies because they are not sudden, direct, and accidental loss or damage, nor are they damage to any auto described on Plaintiffs' Declarations Pages.

Montana follows the general rule "that a party in a civil action is not entitled to attorney fees absent a specific contractual or statutory provision." *Mt. W. Farm Bureau Mut. Ins. Co. v. Brewer*, 69 P.3d 652, 655 (Mont. 2003).  An exception to this rule, however, may be found if an insurer breaches is obligation to defend an insured.  *Id.*

Here, Defendants did not breach its duty to defend.  Rather, Plaintiffs pursued recovery from the insurance companies of the at-fault drivers and then approached their own insurance company, Defendants, to ask for recovery for the expenses of that endeavor.  Although Montana has recognized recovery for attorneys' fees and costs in the first instance, it has not in the second.

Plaintiffs made their claims in this case under their Collision Coverage, which state: "Subject to the Limits of Liability, if you pay the premium for Collision Coverage, we will pay for loss to your insured auto and its equipment when it collides with another object or overturns."  (Doc. 21-2, Ex. 2 at 14.)  When

8

applying the defined terms, the policy provides coverage for "sudden, direct and accidental loss or damage" to "[a]ny auto specifically described on the Declarations Page." (*See* United Fin.'s Br., doc. 21 at 8.)  Nothing in Plaintiffs' Collision Coverage provides recovery for attorneys' fees and costs.  As a result, attorneys' fees and costs are not recoverable damages and were properly denied.

> **3.  Plaintiffs' claims for collision damages for which they have already been compensated were properly denied under the policies' duplicate recovery provision.**

United Financial denied Plaintiffs' claims under their Collision Coverage for collision damages on the grounds that Plaintiffs have recovered all of their collision damages from the insurers of the at-fault third parties.  According to the Complaint, the damage to Forsman and Gruber's automobiles was "paid by the at-fault driver's insurance company." (Doc. 5 at ¶¶ 3, 4.)  However, the Complaint goes on to allege "[n]either Forsman nor Gruber were compensated for all of their damages and their costs of recovery (including attorneys fees) by settlement with that at-fault insurers." (*Id.* at ¶ 5.)

Located under the "Limit of Liability" section of the policy, the duplicate recovery clause states: "Payments for loss covered under the Collision Coverage, Comprehensive Coverage, Fire and Theft with Combined Additional Coverage are subject to the following provisions: **** duplicate recovery for the same elements

9

of damages is not permitted." (Doc. 21-2, Ex. 2 at 17.)

Although this Court must view the facts in the light most favorable to Plaintiffs, the Complaint clearly states that Plaintiffs have recovered for their collision damages. Because the outstanding damages alleged by Plaintiffs are not collision damages (i.e., claims for attorneys' fees and costs of recovery), Plaintiffs can prove not set of facts in support of their claim that would entitle them to relief. As a result, Plaintiffs fail to make a plausible claim that they have been denied any "recoverable" damages under their insurance policies.

Plaintiffs further contend, however, that the duplicate recovery clause at issue is not valid as it is ambiguous and amounts to de facto subrogation in violation of Montana public policy. Plaintiffs are incorrect on both points.

a.     The duplicate recovery provision is not ambiguous.

When interpreting an insurance policy, the Court must "read the policy as a whole and, if possible, [] reconcile its various parts to give each one meaning and effect." *See Newbury v. St. Farm Fire & Cas. Ins. Co. of Bloomington, Ill.*, 184 P.3d 1021, 1025 (Mont. 2008). "The terms and words used in an insurance contract are to be given their usual meaning and construed using common sense." *Id.* "A contract provision is ambiguous if it is susceptible, without violence, to more than one reasonable interpretation." *Giacomelli v. Scottsdale Ins. Co.*, 221

P.3d 666, 672 (Mont. 2009). This is a question of law, "which courts resolve from the viewpoint of the layperson untrained in the law or the insurance business." *Id.* (internal quotation marks and citation omitted). "When the language of an insurance contract is ambiguous, courts construe the ambiguous provisions against the insurer and in favor of extending coverage." *Id.* However, a court will not create ambiguity in an insurance policy where none exists. *Id.*

Plaintiffs contend the duplicate recovery provision is ambiguous because it does not specify that it includes recoveries from third party sources and it is not listed in the "Exclusions" section of the policy. Plaintiffs first argument for ambiguity is that "duplicate recovery" could refer to either: (1) two identical payments made by Defendants under their collision policies; or (2) a payment made by a third party and an identical payment made by Defendants. United Financial contends the "duplicate recovery" provision's inclusion of either situation merely makes it broad, not ambiguous.[2] (Defs.' Br. in Opp., doc. 26 at 9.)

In *Giacomelli*, plaintiffs argued that a provision excluding coverage that

_____

[2] Although United Financial does not address Plaintiffs' ambiguity arguments in the context of the 12(c) motion, the same issue was briefed by both parties in the context of Plaintiffs' Motion for Partial Summary Judgment. (*See* doc. 15).

applied "generally to operations of a horse racing track" should be found

ambiguous.  221 P.3d at 673.  The plaintiffs contended the exclusion could be

reasonably interpreted to "apply only to injuries arising from the natural or

inherent risks of horse racing," and not "injuries allegedly caused by an insured's

breach of duty to design, inspect, maintain, or operate the race track in a safe

condition[.]" *Id.*  However, the Court rejected a finding of ambiguity, stating that

it could find "no support for [the plaintiffs'] interpretation in the language of the

exclusion."  *Id.*  In a California case, the court provided the example that if an

insurance policy excluded coverage for any claim arising from the operation of a

"motor vehicle," such a term could either be "an automobile or a truck, but that

does not mean it must be only one or the other, rather than both."  *Bay Cities*

*Paving & Grading, Inc. v. Lawyer's Mut. Ins. Co.*, 855 P.2d 1263, 1271 (Cal.

1993).  The court went on to find that the term "related," though broad, was not

necessarily ambiguous as it must be considered "in the context of *this* policy and

the circumstances of *this* case."  *Id.* (emphasis in original).

Similar to the situation in both *Giacomelli* and *Bay Cities*, the policy

provision in question provides no support for a finding of ambiguity based upon

Plaintiffs' interpretation.  According to *Black's Law Dictionary*, "duplicate" is

defined as "[t]o copy exactly" or "[t]o double; to repeat."  At 577 (Bryan A.

12

Garner, ed., 9th ed. 2009). "Double recovery" is then defined as "[a] judgment that erroneously awards damages twice for the same loss" or "[r]ecovery by a party of more than the maximum recoverable loss that the party has sustained." *Id.* at 1389.

Based on these definitions, the focus of duplicate recovery is not on the source of the recovery, but the recovery experienced by the insured. Thus, even if the provision is susceptible to both of Plaintiffs' hypotheticals, such breadth does not give rise to ambiguity. Furthermore, the concept of duplicate recovery or double recovery as referring to recovery from more than one source is prevalent in Montana case law.

Plaintiffs premise their second ambiguity argument on the fact that the "duplicate recovery" clause is located under the "Limit of Liability" section rather than the "Exclusions" section of the policy. A similar argument was addressed by the Montana Supreme Court in *Newbury*, where it determined that a policy was not ambiguous simply because the exclusionary provision was not included on the declarations page. 184 P.3d at 1027. The Court stated the declarations page had to be considered in the context of the entire agreement, noting that "an ambiguity exists only when the policy, *taken as a whole*, is reasonably subject to two different interpretations." *Id.* (emphasis in original).

13

Here, the "duplicate recovery" provision falls under the "Limit of Liability" section of the insurance policy and the subsection specifically references "loss covered under Collision Coverage . . . ."  (Doc. 21-2, Ex. 2 at 17.)  The Collision Coverage section of the policy includes a similar cross reference, stating, "*Subject to the Limits of Liability*, if you pay the premium for Collision Coverage, we will pay for loss to your insured auto and its equipment when it collides with another object or overturns."  (*Id.* at 14 (emphasis added).)  As a result, the "duplicate recovery" clause is not ambiguous when considering the provision in the context provided by the policy as a whole, even if it does not appear in the exclusions section.

Based on the foregoing, the policy's "duplicate recovery" provision is not ambiguous.

>           **b.    The "duplicate recovery" provision does not amount to de facto subrogation.**

Plaintiffs claim the language Defendants relied upon in denying coverage conflicts with the public policy against subrogation before the insured has been made whole and should be disregarded.  According to Plaintiffs, to be made whole they must recover all of their damages and costs of recovery (including attorneys' fees).  United Financial contends the "made whole" doctrine does not apply in this

14

case because the clause at issue is a valid double-recovery exclusion and the denial of insurance benefits was neither subrogation nor de facto subrogation.

Subrogation is an equitable doctrine designed to compel the ultimate payment of an obligation by the person "who in justice, equity and good conscience should pay it." *Skauge v. Mt. Sts. T. & T.*, 565 P.2d 628, 630 (Mont. 1977). Subrogation is against the public policy of Montana if it occurs before the insured is made whole, including compensation for attorney's fees. *Steinke v. Safeco Ins. Co. of Am.*, 270 F. Supp. 2d 1196, 1199 (D. Mont. 2003) (citing *Swanson v. Hartford Ins. Co. of the Midwest*, 46 P.3d 584 (Mont. 2002)). However, "in Montana, parties to an insurance contract may include provisions that exclude coverage without violating public policy if the exclusion applies to optional, rather than mandatory coverage." *See Newbury*, 184 P.3d at 1027. The provisions regarding optional coverage in an insurance contract are thus "at the sole discretion of the parties to the contract." *Id.* "Therefore, where an insured is injured in a vehicle, it is permissible for a policy to limit or even exclude coverage to the extent other primary insurance like that of the driver and/or tortfeasor is available and required to be payable." *Bolin v. Allstate Indem. Co.*, 2010 WL 4286357 at *4 (D. Mont., Oct. 19, 2010) (citing *Newbury*, 184 P.3d at 1028. In Montana, collision coverage is optional. *See* Mont. Code Ann. § 61-6-103;

15

*Newbury*, 184 P.3d at 1027.

The parties here take a diverging view of the nature of the "duplicate recovery" clause. Plaintiffs insist it is a de facto subrogation clause in violation of Montana's public policy, while United Financial contends it is merely a valid exclusionary clause. If this clause is a de facto subrogation clause, there is clear Montana case law that supports a finding that it is in violation of public policy. On the other hand, if it is merely an exclusionary clause, there is also case law supporting a conclusion that it is not in violation of public policy. Having considered the nature of the provision and relevant case law, the "duplicate recovery" provision is an exclusion and not de facto subrogation.

In *Newbury*, the Montana Supreme Court reviewed a similar provision contained in an automobile insurance policy. 184 P.3d 1021. There, the plaintiff was struck by another vehicle in the course of his employment. He subsequently filed a claim for and received worker's compensation medical benefits. Because his resulting medical expenses were higher than the benefits he received, he turned to his two automobile insurance policies with State Farm, which allowed for $5,000 per policy for medical expenses arising from bodily insured sustained "through being struck as a pedestrian by a motor vehicle[.]" *Newbury*, 184 P.3d at 1023. Newbury sought to recover the full $10,000 even though only $1,175.80 in

medical expenses was not covered by worker's compensation.  State Farm paid the

$1,175.80 but denied any further payment, relying on a provision of his insurance

policy that stated there would be no coverage "to the extent workers'

compensation benefits are required to be payable."  *Id.*  The Montana Supreme

Court determined this clause did not violate public policy based on the parties'

right to exclude optional coverage under the policy.  *Id.* at 1027.

The *Newbury* provision is substantially similar to the clause in the present

case.  Specifically, both provisions are found in automobile insurance policies and

both provisions involve payments by a primary party other than the insurer.

Similarly, in *Bolin*, the plaintiff's policy expressly stated in both her medical

payments coverage and her underinsured motorist coverage  that no "duplicate

payments for the same elements of loss" would be paid under those coverages.  *Id.*

at *5.  Bolin's total loss was calculated to be $42,000.  *Id.*  Bolin had already

received $30,000 Bodily Injury limits from the tortfeasor, $10,000 Med Pay limits

from Hartford Insurance, and $5,000 Med Pay limits from Allstate, the defendant.

*Id.*  Based on these payments, Allstate contended that Bolin had been fully

compensated for all recoverable damages.  *Id.*  Bolin contended, on the other hand,

that "Allstate's practice of taking credit for other personal, portable, first party

insurance benefits when adjusting its insured's claims constitute[d] *de facto*

subrogation and [was] therefore contrary to Montana law." *Id.* After determining Montana case law demonstrates a history of recognizing double recovery clauses, the district court held that Allstate's actions did not violate public policy. *Id.* at *7.

Plaintiffs ask this Court to reject the holding in *Bolin* because the case has been stayed pending the Ninth Circuit's decision in *Gettle* and because it was wrongly decided. (Pls.' Resp., doc. 25 at 6, 25.) Plaintiffs' first contention is unpersuasive because until *Bolin* is reversed on appeal, this Court may consider its authority.

As to Plaintiffs' second contention, Judge Cebull's reliance and interpretation of Montana law in this area was neither misplaced nor mistaken. Plaintiffs focus on the fact that the cases cited by the district court were all decided before *Swanson*, which they believe to be the definitive case in this area. However, Plaintiffs argument is unpersuasive for two reasons. First, the *Bolin* court merely cited *Liedle v. St. Farm*, 938 P.2d 1379 (Mont. 1997), *Olson v. Daughenbaugh*, 38 P.3d 154 (Mont. 2001), *Thayer v. Uninsured Employers' Fund*, *Newbury*, 991 P.2d 447 (Mont. 1999), and *Gettle v. Prop. & Cas. Ins. Co. of Hartford*, CV 09-43-RFC (D. Mont., Feb. 9, 2010) (*see also* doc. 17 at Ex. E), as evidence of "a long history of recognition in the insurance and workers'

18

compensation arena, of credits, offsets and the exclusion of double recoveries and payments."  *Bolin*, *4-5.  Furthermore, in the *Bolin* court's discussion of *Thayer* and *Blue Cross Blue Shield of Montana, Inc. v. Montana State Auditor*, 218 P.3d 475 (Mont. 2009), the court specifically analyzes why the two cases are distinguishable; *Thayer* because it involves a "safety net" under the "Uninsured Employers' Fund" and *Blue Cross Blue Shield* because the clause at issue allowed the insurer to avoid payment when the insured was "entitled to receive" benefits from another source, not when he or she actually received benefits from another source.  Here, similar to the plaintiffs in both *Newbury* and *Bolin*, Plaintiffs appear to ask this Court to ignore payments they have already received in order to trigger policy coverage.

Second, although *Swanson* clearly reflects Montana law in the area of subrogation, it is unclear whether the Court in *Swanson* intended to address de facto subrogation or the made whole doctrine outside of the subrogation context. In *Swanson*, the Montana Supreme Court stated, "under Montana's established common law, duplicate payments do not occur until the insured has been made whole for all losses, as well as costs of recovery." 46 P.3d at 588.  However, the Court goes on to state that the two rules of subrogation are that "an insured should not receive duplicate payments for the same element of loss" and "the insurer may

not assert subrogation rights until the insured has been fully compensated for his damages, including attorneys fees and costs." *Id.*  In doing so, the Court affirms the viability of duplicate recovery restrictions, but limits their application specifically in the subrogation context.

Here, the double recovery provision in Defendants' policies does not amount to subrogation.  As a legal term of art, subrogation is "[t]he substitution of one party for another whose debt the party pays, entitling the paying party to rights, remedies, or securities that would otherwise belong to the debtor." *Thayer*, 991 P.2d at 449 (quoting *Black's Law Dictionary* 1440 (Brian A. Garner ed., 7th ed., West 1999)).

Plaintiffs fail to demonstrate how the present clause gives Defendants the authority to "substitute themselves for the insured." *See id.*; *see also Gettle*. Unlike subrogation, Defendants are not attempting to recover any money from the individuals responsible for the loss.  Rather, Defendants are attempting to enforce the terms of the insurance policy; that is, to only allow insureds to recover under the collision portion of the policy to the extent they have not already done so and thus prevent them from "profiting" from such a loss. *See Scheafer v. Safeco Ins. Co. of Ill.*, DV-09-111 (Mont. Eighteenth Jud. Dist. Ct., June 22, 2011), doc. 31-1, Ex. A at 10.

20

Further, Plaintiffs are receiving coverage for the premiums they have paid. *See Mitchell v. St. Farm Ins. Co.*, 68 P.3d 703 (Mont. 2003). The only limitation on that coverage is that it does not extend to cover the same damages for which the insured has already received payment. Thus, based on the reasoning outlined in *Newbury*, Defendants have a contractual right to exclude certain optional coverages.

The "duplicate recovery" provision included in Defendants' insurance policies is an exclusion regarding optional coverage and does not amount to de facto subrogation. Because Plaintiffs admit in the Complaint that they have already been compensated for their collision damages, Defendants properly invoked the policies' duplicate recovery provision to bar additional recovery of collision damages.

United Financial's 12(c) motion is granted because Plaintiffs fail to allege any recoverable damages for which they have not been compensated for, the duplicate recovery provision is valid as a matter of law, and the policy language does not provide for recovery for attorneys' fees and costs.

21

C.     **Rule 56 Motion**

1.     **The "duplicate recovery" clause does not violate Montana's "made whole" rule.**

As discussed above, the "duplicate recovery" clause at issue amounts to an exclusion of optional coverage under the policy and not subrogation or de facto subrogation.  As such, it does not violate Plaintiffs' made whole rights.

2.     **The "duplicate recovery" provision is not ambiguous.**

Plaintiffs make three arguments in their motion for partial summary judgment as to why the "duplicate recovery" clause is ambiguous: (1) it does not specify that it includes recoveries from third party sources; (2) it could be interpreted to prohibit recovery where a family member has paid money to fix a damaged vehicle; and (3) it is not listed on the Declarations Page.  The first is unpersuasive in the context of United Financial's 12(c) motion.  As for the second, United Financial contends such a reading of the provision ignores the plain meaning of the word "recovery," which does not include money obtained by gift from someone who is not responsible for the loss.  *See Steadele v. Colony Ins. Co.*, 260 P.3d 149 (Mont. 2011) (noting that courts must interpret insurance policy terms according to their usual, common sense meaning as viewed from the perspective of a reasonable consumer of insurance products).  As pointed out by

22

United Financial, this understanding of the word "recovery" is consistent

throughout the policies to mean recovery from a responsible third party or the

party's insurer.

Regarding Plaintiffs' third contention, the Montana Supreme Court in

*Newbury* rejected almost an identical argument finding that although the policy in

question did not include a reference to the exclusion on the Declarations Page, the

policy read as a whole was not ambiguous.  184 P.3d at 1027.  Such is the case

here.  Furthermore, the Declarations Page in this case references the "Limit of

Liability" in determining Collision Coverage, which is where the "duplicate

recovery" provision is located.  (Doc. 17-1, Ex. 1 at 2.)

Plaintiffs further contend the clause's location creates structural ambiguity.

In *Shook v. St. Farm. Mut. Ins. Co. of Bloomington, Ill.*, 872 F. Supp. 768, 775-76

(D. Mont. 1994), the district court noted that "the positioning of [an] exclusion, in

relation to the general coverage provision, lends itself to the creation of the

ambiguity in the exclusion."  However, as previously noted, this "duplicate

recovery" provision is located under the "Limit of Liability" section in reference

specifically to Collision Coverage.  Such a location is not "obscure" as argued by

Plaintiffs.

Plaintiffs also argue that the "duplicate recovery" provision violates the

23

reasonable expectations of the insured.  Plaintiffs contend they expected

Defendants to pay for their collision damage and paid valuable consideration for

that coverage.  (Pls.' SUF, doc. 19 at ¶¶ 4, 11.)  Plaintiffs maintain Defendants'

subsequent failure to pay their collision damage violated Plaintiffs' reasonable

expectations.

"The reasonable expectations doctrine is inapplicable where the terms of the

insurance policy clearly demonstrate an intent to exclude coverage." *Newbury*,

184 P.3d at 1027.  Moreover, "expectations which are contrary to a clear exclusion

from coverage are not objectively reasonable." *Parish v. Morris*, 278 P.3d 1015,

1019 (Mont. 2012).  As discussed in the context of United Financials 12(c)

motion, the policies in question show an intent to exclude coverage in situations

where an insured would experience "duplicate recovery for the same elements of

loss."  While it is reasonable for Plaintiffs to expect that their Collision Coverage

would pay for covered damages they had not yet been compensated for, once

Plaintiffs recovered for those damages, it was not reasonable for Plaintiffs to

expect to receive excess funds.

> **3.  Defendants' actions pursuant to the "duplicate recovery"
>       provision were not a violation of the implied covenant of good
>       faith and fair dealing.**

Plaintiffs argue Defendants have breached the implied covenant of good

24

faith and fair dealing by depriving them of the benefits of extra protection they have paid for under their respective policies.  United Financial insists its denial of collision benefits was not an exercise of implied discretion, but rather an action taken pursuant to the express terms of the insurance policy contract.

The implied covenant is implicit in the agreement and can be breached without breaching an express contractual term.  *Phelps v. Frampton*, 170 P.3d 474, 484 (Mont. 2007).  The covenant is breached where one party uses discretion conferred by the contract to unfairly deprive the other party of the benefit of the bargain by acting dishonestly or abusing discretion granted by the contract.  *Id.* The covenant is measured by the justifiable expectations of the parties.  *Hardy v. Vision Service Plan*, 120 P.3d 402, 405 (Mont. 2005).  Expectations that contradict an express term of the contract are *per se* unjustifiable.  *See id.* An "alleged implied covenant cannot be in direct contradiction of the written term contract" and cannot "be read to prohibit a party from doing that which is expressly permitted by an agreement."  *Farris v. Hutchinson*, 838 P.2d 374, 376-77 (Mont. 1992) (citation omitted).

Here, the insurance policies in question allow the insurer to deny certain coverages in situations of duplicate recovery.  As such, action pursuant to this provision is provided for under the contract and not one of discretion.  Thus,

Defendants' denial of coverage under the duplicate recovery clause does not

amount to a breach of the implied covenant of good faith and fair dealing.

**4.    Plaintiffs' argument that the "duplicate recovery" provision is discriminatory fails as a matter of law.**

Plaintiffs contend the "duplicate recovery" provision is discriminatory

because it applies only to those insureds who are first paid their property damages

by an at-fault party and not those who first seek recompense under the policy's

collision coverage.  United Financial contends Plaintiffs lack standing to bring this

claim and that the anti-discrimination statute at issue does not cover discrimination

of the type alleged.

United Financial first argues Plaintiffs' discrimination claim is barred by the

Unfair Trade Practice Act (UTPA).  Section 33-18-242 of the Montana Code

contains an exclusive list of the first-party claims that an insured may bring

against an insurer.  As previously held by this Court, "[d]iscrimination claims are

not included in this exclusive list."  *Burton v. Mt. W. Farm Bureau Mut. Ins. Co.*,

214 F.R.D. 598, 613 (D. Mont. 2003).  Accordingly, Plaintiffs discrimination

claim fails as a matter of law.

**5.    The "duplicate recovery" provision does not make coverage for collision damages illusory.**

Plaintiffs contend collision coverage is illusory under the "duplicate

26

recovery" provision because it does not apply where there is a liable third-party. United Financial contends that there is value to Plaintiffs' collision coverage, even with the application of the "duplicate recovery" provision.

The Montana Supreme Court has disapproved "on public policy grounds of policy language which defeat[s] coverage for which valuable consideration ha[s] been paid—i.e., policy language which render[s] the purchased coverage 'illusory.'" *State Farm Mut. Auto. Ins. Co. v. Gibson,* 163 P.3d 387, 390 (Mont. 2007); *see also Hardy v. Progressive Specialty Ins. Co.*, 67 P.3d 892, 899 (Mont. 2003). An insurance policy is illusory if it provides effectively non-existent coverage for the premium paid. *See Monroe v. Cogswell Agency*, 234 P.3d 79, 83 (Mont. 2010) (finding coverage "far from being illusory" where disputed exclusion made coverage available only in limited circumstances).

As noted by United Financial, there a number of situations in which insureds can recover under the Collision Coverage at issue, even with the duplicate recovery provision. For example, such recovery can occur when an insured first demands payment from United Financial under the policy (as opposed to recovering from an at-fault third party first), where the insured is at fault for the accident, whether the responsible party's liability limits are less than the damage to the insured's auto, and where the insured collides with an object rather than

27

another vehicle.  (*See* United Fin.'s Br. in Opp., doc. 26 at 20.)  Because Plaintiffs can point to a situation in which coverage may be excluded does not mean the Collision Coverage as a whole is illusory.

## VI. Conclusion

IT IS ORDERED that United Financial's Rule 12(c) motion (doc. 20) is GRANTED. Consequently, United Financial's Rule 56(d) motion (doc. 27) is DENIED AS MOOT.

IT IS FURTHER ORDERED that Plaintiffs' motion for partial summary judgment (doc. 15) is DENIED.

IT IS FURTHER ORDERED that the Clerk of Court is directed to enter judgment in favor of Defendants. Plaintiffs' complaint is DISMISSED WITH PREJUDICE.

Dated this 21st day of August 2013.

DONALD W. MOLLOY, DISTRICT JUDGE
UNITED STATES DISTRICT COURT